John P. Aldrich, Esq.
Nevada Bar No. 6877
**ALDRICH LAW FIRM, LTD.**
7866 West Sahara Avenue
Las Vegas, NV 89117
Tel: (702) 853-5490
Fax: (702) 227-1975
jaldrich@johnaldrichlawfirm.com

Jason M. Kerr, Esq.
Nevada Bar No. 7773
**PRICE PARKINSON & KERR**
5742 W. Harold Gatty Dr.
Salt Lake City, Utah 84116
Telephone: (801) 530-2900
Facsimile: (801) 530-2957
jasonkerr@ppktrial.com

*Attorneys for Defendant, Counterclaim Plaintiff,*
*and Third Party Plaintiff Novex Biotech, LLC*

# UNITED STATES DISTRICT COURT
## DISTRICT OF NEVADA

| | |
|---|---|
| ABG-SHAQ, LLC, a Delaware limited liability company,<br><br>    Plaintiff,<br><br>v.<br><br>NOVEX BIOTECH, LLC, a Utah limited liability company,<br><br>    Defendant. | Case No. 2:24-cv-0996<br><br>__ANSWER, COUNTERCLAIM AND THIRD-PARTY COMPLAINT__ |
| NOVEX BIOTECH, LLC, a Utah limited liability company,<br><br>    Counterclaim Plaintiff,<br><br>v.<br><br>ABG-SHAQ, LLC a Delaware limited liability company,<br><br>    Counterclaim Defendant. | |

NOVEX BIOTECH, LLC, a Utah limited
liability company,

    Third Party Plaintiff,

v.

SHAQUILLE O'NEAL, an individual,

    Third Party Defendant.

## ANSWER

Defendant Novex Biotech, LLC ("Novex") responds to the Complaint filed by Plaintiff ABG-SHAQ, LLC ("ABG") as follows:

## PARTIES, VENUE & JURISDICTION

1.    Admit.

2.    Admit.

3.    Admit.

4.    Admit.

5.    Admit.

## GENERAL ALLEGATIONS

6.    Admit that the noted parties executed the Agreement and that the Agreement speaks for itself. Affirmatively allege that Shaquille O'Neal ("Mr. O'Neal") also executed the Agreement.

7.    Admit that the Agreement speaks for itself and denies all allegations inconsistent with the Agreement.

8.    Admit that the Agreement speaks for itself and denies all allegations inconsistent with the Agreement.

9.    Admit that the Agreement speaks for itself and denies all allegations inconsistent with the Agreement.

10.     Admit that the Agreement speaks for itself and denies all allegations inconsistent with the Agreement.

11.     Admit that the Agreement speaks for itself and denies all allegations inconsistent with the Agreement.

12.     Deny.

13.     Deny.

### FIRST CLAIM FOR RELIEF
### Breach of Contract

14.     Novex incorporates all foregoing responses.

15.     Admit that Novex, ABG, and Mr. O'Neal executed the Agreement and that the Agreement speaks for itself. Novex denies all allegations inconsistent with the terms of the Agreement.

16.     Deny.

17.     Deny.

18.     Deny.

19.     Deny.

### SECOND CLAIM FOR RELIEF
### Breach of Covenant of Good Faith and Fair Dealing

20.     Novex incorporates all foregoing responses.

21.     Novex notes that this paragraph states a legal conclusion to which no response is required.

22.     Deny.

23.     Deny.

24.     Deny.

### THIRD CLAIM FOR RELIEF
**Declaratory Relief Under 28 U.S.C. § 2201**

25.     Novex incorporates all foregoing responses.

26.     Deny.

27.     Deny.

### FOURTH CLAIM FOR RELIEF
**Declaratory Judgment Pursuant to Nevada Revised Statutes §§ 30.010 et seq.**

28.     Novex incorporates all foregoing responses.

29.     Deny.

30.     Deny.

### PRAYER FOR RELIEF

WHEREFORE, Novex respectfully requests the following:

A.     That judgment be entered against ABG on each of its claims for relief and that ABG be awarded nothing;

B.     That ABG's request for attorney's fees and costs in this action be denied in full;

C.     That ABG be denied all declaratory relief that it requests;

D.     That ABG be awarded no relief whatever as a result of its Complaint; and

E.     That Novex be awarded relief as the Court may deem just and equitable.

### AFFIRMATIVE DEFENSES

#### First Defense

The Complaint fails to state a claim upon which relief can be granted.

#### Second Defense

The claims asserted in the Complaint are barred in whole or in part by ABG's breach of the Agreement.

4

### Third Defense

The claims asserted in the Complaint are barred in whole or in part by Mr. O'Neal's breach of the Agreement.

### Fourth Defense

The claims asserted in the Complaint are barred in whole or in part by the doctrine of first or prior breach.

### Fifth Defense

The claims asserted in the Complaint are barred in whole or in part by the doctrine of assumption of unclean hands.

### Sixth Defense

The claims asserted in the Complaint are barred in whole or in part by ABG's failure to join an indispensable party.

### Seventh Defense

The claims asserted in the Complaint are barred in whole or in part by estoppel.

### Eighth Defense

The claims asserted in the Complaint are barred in whole or in part by other equitable doctrines including but not limited to unjust enrichment.

### Ninth Defense

The claims asserted in the Complaint are barred in whole or in part by the doctrine of offset.

### Tenth Defense

The claims asserted in the Complaint are barred in whole or in part by the doctrine of good faith.

### Reservation of Rights

Novex reserves the right to raise further defenses as discovery proceeds in this case.

### COUNTERCLAIM AND THIRD PARTY COMPLAINT

Counterclaim Plaintiff and Third Party Plaintiff Novex Biotech, LLC ("Novex") complains of Counterclaim Defendant ABG-Shaq, LLC ("ABG") and Third Party Defendant Shaquille O'Neal ("Mr. O'Neal") (together, "Counterclaim Defendants") as follows:

### PARTIES, JURISDICTION, AND VENUE

1.      Novex is a limited liability company organized and existing under the laws of the State of Utah.  Its principal place of business is located at 5742 West Harold Gatty Drive in Salt Lake City, Utah.

2.      Defendant ABG is a limited liability company organized and existing under the laws of Delaware.

3.      Defendant Mr. O'Neal is an individual residing in Georgia.

4.      Subject matter jurisdiction over this action is conferred upon this Court by 28 U.S.C. § 1332 because there is complete diversity and the amount in controversy exceeds the requisite amount.

5.      The Court has personal jurisdiction over Counterclaim Defendants pursuant to the Nevada Long-Arm Statute, Nev. Rev. Stat. § 14.065 because the parties have entered into a contract consenting to jurisdiction in this Court and agreeing that any action involving the rights, duties and obligations of any party thereto must be brought in this Court and in this venue.

6.      Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b).

### GENERAL ALLEGATIONS

**The Endorsement Agreement**

7.      Novex distributes the product GF-9, a dietary supplement clinically shown to naturally increase human growth hormone ("hGH") levels up to 682%. This is desirable to consumers of GF-9 because studies have found hGH to be associated with increased lean muscle, improved energy, reduced body fat, and improved sleep.

6

8.      In 2020, Novex searched for a well-known personality who could use GF-9, experience the benefits of GF-9 and describe his experience with the product to potential consumers.

9.      Among other things, Novex wanted an endorser who would be able to use GF-9 as part of a regimen to get into visibly better shape and remain in better shape while promoting GF-9 and its benefits.

10.     During this process, Novex connected with ABG and Mr. O'Neal.

11.     ABG claimed that Mr. O'Neal had an excellent track record in promoting other products and expressed that ABG and Mr. O'Neal would work hard to promote Novex's GF-9 product.

12.     ABG also pushed for Mr. O'Neal to be involved because he was excited about GF-9, the prospect of using it to become more fit, and the opportunity to promote GF-9 as part of his fitness regimen.

13.     Novex and ABG negotiated the terms of an agreement over several weeks.

14.     In September of 2020, Novex, ABG, and Mr. O'Neal, executed an Endorsement Agreement with an effective date of September 1, 2020 (the "Agreement").

15.     The Agreement had a term set to expire on December 31, 2023 unless the parties mutually agreed to renew.

16.     The Agreement required ABG and Mr. O'Neal to engage in various activities to promote GF-9 and other of Novex's products (the "Products"), including but not limited to appearing for video shoot sessions that Novex would use to advertise the Products, making various public appearances, making various social media posts, and more.

17.     Specifically, the Agreement required ABG and Mr. O'Neal, during each year of the term of the Agreement, to require Mr. O'Neal, among other things, to:

a.      make up to 2 personal appearances for the purpose of creating visual and audiovisual content to be used to promote the Products;

b.      make up to 3 personal appearances at press events and/or other public appearances as directed by Novex, including a media day during which Mr. O'Neal would promote the Products and discuss his relationship with Novex;

c.      participate in 1 "AMA";

d.      participate in in at least 10 media interviews via telephone, radio, or video conference; and

e.      create and post monthly videos marketing the Products on Mr. O'Neal's social media channels.

18.     The Agreement also required Mr. O'Neal to undergo a fitness, diet, and supplement regimen that would decrease Mr. O'Neal's body fat percentage ("BFP") by 8% by December of 2020 and then thereafter maintain his BFP to be at least 5% lower than his starting BFP for the duration of the term of the Agreement.

19.     In order to accurately measure Mr. O'Neal's BFP, Mr. O'Neal was required to have his BFP measured by a Dexascan machine. Although not required to do so under the contract, Novex purchased a Dexascan machine at a cost of $30,000 for Mr. O'Neal's use before Mr. O'Neal began the regimen. In December of 2020, after completing the initial regimen, Counterclaim Defendants were required to report the results to Novex within a day of each Dexascan scan. The Agreement also obligated Mr. O'Neal to, on the same day of each Dexascan scan, have his arms, chest, waist, thighs, and calves measured in inches (a "Measurement") and to report each Measurement to Novex at the same time Mr. O'Neal reported his BFP.

20.     The Agreement required ABG and Mr. O'Neal to ensure that Mr. O'Neal underwent regular quarterly Dexascan scans and Measurements throughout the term of the Agreement, and to report the results of each scan and measurement to Novex within a day of each

scan and Measurement. ABG and Mr. O'Neal were to ensure that these scans, Measurements, and reporting took place on or within 10 days of February 1, May 1, August 1, and November 1 of each calendar year during the term of the Agreement.

21.    In return for Counterclaim Defendants' compliance with these obligations, Novex agreed to pay ABG monthly royalty payments, with a minimum royalty amount for each calendar year of the contract so long as Counterclaim Defendants were in compliance with the terms of the Agreement.

**Counterclaim Defendants' Failure to Comply with Obligation to Perform Quarterly Dexascan Scans, Take Measurements, and Report to Novex**

22.    In the months following the parties' execution of the Agreement, Counterclaim Defendants generally complied with the Agreement. Mr. O'Neal followed the planned regimen of diet, workout, and use of Novex's GF-9 product and reduced his BFP as the Agreement required. Novex was able to confirm this reduction in Mr. O'Neal's BFP because Mr. O'Neal used the Dexascan machine to determine his BFP and reported the results to Novex.

23.    During 2021, however, and for the duration of the term of the Agreement, ABG and Mr. O'Neal wholly failed to report to Novex Mr. O'Neal's BFP or Measurements. On information and belief, ABG and Mr. O'Neal did not even perform the requisite Dexascan scans and Measurements. The last time ABG and Mr. O'Neal reported the results of any scan and any Measurements to Novex was in December of 2020.

24.    Periodically during the term of the Agreement, ABG and Mr. O'Neal provided to Novex Mr. O'Neal's body weight in pounds. But this information was not what Novex bargained for. Novex specifically negotiated, and Counterclaim Defendants agreed to provide, quarterly reports of Mr. O'Neal's BFP and Measurements, not his body weight. Novex never accepted body weight instead of the BFP and Measurements.

25.     The Agreement provides, among other things, that Novex may withhold royalty payments to ABG if ABG or Mr. O'Neal fail to comply with the BFP, Measurement, and reporting obligations of the Agreement.

**As Early as at Least 2022, ABG and Mr. O'Neal Lost Enthusiasm for the Deal and Over-committed Mr. O'Neal**

26.     As early as at least 2022, it became harder and harder for Novex to obtain the necessary content and participation required of ABG and Mr. O'Neal.

27.     Novex had to constantly follow up with Counterclaim Defendants to obtain the agreed upon content required in the Agreement.

28.     By early 2023, Counterclaim Defendants had almost entirely stopped complying with all of their obligations under the contract, including their obligation to promote the Products and create content necessary to promote them.

29.     The Agreement was not the only endorsement agreement in which ABG and Mr. O'Neal were participants. By early 2023, it became clear that ABG had overcommitted Mr. O'Neal on third party endorsement deals and other engagements. Counterclaim Defendants failed to schedule appearances, obtain content, and otherwise get Counterclaim Defendants to comply with their appearance and content-creation obligations under the Agreement. Upon information and belief, by 2022 Mr. O'Neil had dozens of endorsement deals, including for copiers, video games, fast food restaurants, and car insurance.  His deals include companies such as Reebok, PepsiCo, Icy Hot, NBA 2K, Taco Bell, Wheaties, and JCPenny.

30.     Instead of being met with enthusiasm for Novex's requests for content and appearances, ABG signaled that the relationship and the Agreement had become a burden to them.

31.     For example, in 2022, ABG asked Novex to begin working with a third-party agency (and pay their agency fees) in order to coordinate Mr. O'Neal's content creation and scheduling of appearances, instead of working with ABG directly as the parties had done up to

that point. Nothing in the Agreement obligated Novex to work through a third-party agency, nor to pay the fees associated with such an agency.

32.     Novex accordingly refused to work through the third-party agency and insisted on continuing to work directly with ABG.

33.     ABG's over-commitment of Mr. O'Neal on third party endorsement deals and Counterclaim Defendants' loss of enthusiasm for promotion of the Products, however, continued to plague the relationship and contributed to Counterclaim Defendants' failure to perform their obligations under the Agreement.

**O'Neal's Failure to Appear at Novex's Facilities in Salt Lake City**

34.     In February of 2023, O'Neal planned to be in Salt Lake City to be part of the coverage for the NBA All Star Game, which was held in Salt Lake City on February 19, 2023.

35.     Upon learning of Mr. O'Neal's upcoming visit to Salt Lake City, Novex reached out to ABG to schedule one of Mr. O'Neal's required in-person public appearances required under the Agreement for the 2023 calendar year.

36.     Novex and ABG agreed that Mr. O'Neal would make a personal appearance at Novex's Salt Lake City facility, which is located just west of the Salt Lake City International Airport, and which is a less-than-fifteen-minute drive from the hotel in which Mr. O'Neal would be staying in downtown Salt Lake City. The agreed upon date was Thursday, February 16, 2023.

37.     Novex intended that the appearance be a morale booster for its employees and as a chance for Novex's employees to increase their own enthusiasm for Novex's Products and the product launches in store for 2023, which ABG and Mr. O'Neal would help promote pursuant to the terms of the Agreement.

38.     Novex arranged for a special lunch at which employees could bring family members and enjoy and chance to hear from and meet Mr. O'Neal.

39.     Most of Novex's employees were present, a significant percentage of which also had family members in attendance with them, eagerly awaiting Mr. O'Neal's arrival.

40.     Minutes before Mr. O'Neal's scheduled arrival time, however, ABG contacted Novex to inform Novex that Mr. O'Neal would not be appearing as planned.

41.     Novex's CEO was forced to explain to the gathered employees and family members that Mr. O'Neal would not be coming as planned. In an attempt to keep spirits high and to curb the disappointment felt, Novex's CEO gave all employees the rest of the day off.

42.     ABG's stated reason for Mr. O'Neal's last minute cancellation was a possible exposure to the COVID-19 virus. But Mr. O'Neal appeared later that evening in a video in which he was riding a scooter in public around a crowded hotel lobby in Salt Lake City. He also made other public appearances over the weekend in conjunction with his coverage of the All Star Game. Counterclaim Defendants stated concern over a possible COVID-19 exposure did not prevent him from other public activities, only from visiting Novex.

43.     Novex tried to arrange for Mr. O'Neal to come to Novex's facilities at another time during his stay in Salt Lake City. Mr. O'Neal came the next day, February 17, 2023, but stayed only for a few minutes due to what ABG claimed was his "tight" schedule. This was the Friday of Presidents Day weekend, however, and most of Novex's employees and family members were unable to attend what ended up being a very small gathering.

44.     Mr. O'Neal's claimed tight schedule rang hollow when, during his broadcast of the NBA All Star Game, he complained about having nothing to do in Salt Lake City and being relegated to eating only "room service" food. Yet Mr. O'Neal, even with time to kill in his hotel, did not comply with his contractually obligated appearance at Novex's facilities less than fifteen minutes away.

45.     ABG's failure to have Mr. O'Neal appear at Novex's facilities as agreed constituted a breach of the Agreement that harmed Novex.

**Counterclaim Defendants' Failure to Promote Novex's New Thermodyne Product and Make Mr. O'Neal Available to Appear at the Launch of Testrovax at GNC**

46.     In January 2023, Mr. O'Neal publicly claimed that he would lose weight and have a six pack by his birthday, March 6th. Novex learned of his goal and immediately had him start taking their newest product, Thermodyne, which is clinically shown to reduce body fat.

47.     Novex launched the new Thermodyne product in the spring of 2023. Thermodyne is one of the Products at issue in the Agreement that Counterclaim Defendants had agreed to endorse. But in 2023, ABG failed to make Mr. O'Neal available for needed content creation and a critical public appearance that Novex intended to use to promote the Products at planned product launches with retailer GNC.

48.     Novex underwent massive preparations and was working carefully with GNC to coordinate a successful launch of Thermodyne at GNC stores. Novex selected a March timeframe for the launch to support Mr. O'Neal's success in reaching his stated March 6 goal.

49.     Novex had made GNC aware of its relationship with ABG and O'Neal and of their obligations to help create content to promote the new Thermodyne product.

50.     Novex relied on the Agreement and Counterclaim Defendants' obligations and good faith in making a product launch plan with GNC.

51.     Counterclaim Defendants, however, failed to promote the new Thermodyne product, failed to provide his BFP and Measurements pursuant to the Agreement, and failed to showcase his weight loss success as publicly declared in early 2023, leaving Novex's brand in a vulnerable position with its customer. Novex was left with GNC inventory not selling and a damaged relationship with GNC due to the failure to come through with the committed promotion of Thermodyne to coincide with the product launch.

52.     Despite requests from Novex, Counterclaim Defendants did not create new content, including requested before and after content showcasing his demonstrable results, to support the Thermodyne product.

53.     As a result, when the new Thermodyne product hit the shelves and was launched at GNC, Novex was without a major part of its planned marketing materials to promote the new product. This harmed Novex's relationship with GNC, which determined to proceed with caution when it came to future product launches with Novex.

54.     Following the Thermodyne launch, Novex made plans to launch another product at GNC, a product called Testrovax. Counterclaim Defendants also promised to promote the Testrovax product in the Agreement.

55.     GNC wanted Novex to have a solid marketing plan in place before committing to a launch date. GNC and Novex hoped to have the product launched in the summer of 2023.

56.     A launch timeframe was set for September of 2023. As part of the product launch plan, Novex planned to use one of Mr. O'Neal's required public appearances under the Agreement to promote Testrovax at a GNC location in order to bolster media buzz and increase excitement about the new product.

57.     But, despite repeated requests, ABG would not commit to a firm date to appear at a GNC location. As late as the end of July of 2023, Novex was still asking ABG for a solid date, to no avail. Meanwhile, Novex's relationship with GNC was becoming strained due to the failed commitment to support the Thermodyne launch (stemming from ABG's failure to provide requested content) and now the inability to nail down an instore appearance date.

58.     As July drew to a close, because the details of Mr. O'Neal's appearance were still uncertain, GNC informed Novex that it would cancel the launch of Testrovax for the planned September 2023 timeframe, insisting that Novex's marketing plan, including Mr. O'Neal's appearance, be on firmer footing before it could commit to partner with Novex on a product launch

14

at GNC. The date was tentatively pushed back to January of 2024, when the Agreement's term would be over.

59.     This was the second time in 2023 that ABG's actions (and inactions) directly damaged Novex's relationship with GNC, one of its main retail partners.

60.     ABG's failure to make Mr. O'Neal available for an in-person appearance and failure to even commit to a solid date, despite repeated requests from Novex, directly led to GNC's cancelling the entire Testrovax product launch that had been set to occur during the term of the Agreement.

61.     ABG's failure to provide a time when Mr. O'Neal would comply with his in-person appearance obligation under the Agreement caused Novex to lose sales and revenue it would have otherwise received in 2023 via the Testrovax launch.

**Counterclaim Defendants' Failure to Make Posts on Social Media Promoting the Products**

62.      The Agreement obligated ABG to cause Mr. O'Neal to make monthly posts promoting Novex's products on Mr. O'Neal's social media channels.

63.     ABG and Mr. O'Neal, however, failed to do so in 2023.

64.     Mr. O'Neal's last social media post that mentioned Novex or the Products was in April of 2023. This was also the last time Mr. O'Neal publicly mentioned Novex or the Products, even though the term of the Agreement continued until the end of 2023.

**Defendant Wrongly Expects Further Royalties**

65.     Notwithstanding the above failures, in early January of 2024, ABG presented Novex with an invoice for an additional $1,095,813.74 in royalties it claims Novex owes ABG.

66.     Counterclaim Defendants have wholly failed to earn the claimed royalties, given the above noted breaches of the Agreement and the demand for payment is invalid.

/ / /

/ / /

### FIRST CLAIM FOR RELIEF
#### (Breach of Contract)

67.     Novex realleges paragraphs 1 through 66 of this Counterclaim and Third Party Complaint as if set forth in full herein.

68.     Counterclaim Defendants willingly and knowingly entered into the Agreement with Novex.

69.     Novex performed all of its obligations under the Agreement.

70.     Counterclaim Defendants failed to perform all of their obligations under the Agreement.

71.     By failing to engage in quarterly BFP scans and Measurements, by failing to report the same to Novex, by failing to make required appearances, by failing to make monthly posts to social media accounts, and by over-extending Mr. O'Neal's schedule, Counterclaim Defendants breached the Agreement.

72.     Counterclaim Defendants' breaches of the Agreement have damaged Novex. Novex has lost sales of the Products as a result of Counterclaim Defendants' breaches. Counterclaim Defendants have paid to ABG royalties under the Agreement to which Counterclaim Defendants were and are not entitled on account of Counterclaim Defendants' breaches.

73.     Novex is entitled to damages as a result of Counterclaim Defendants' breaches in an amount to be proven at trial, but in any event not less than $1,000,000.00.

### SECOND CLAIM FOR RELIEF
#### (Breach of Covenant of Good Faith and Fair Dealing)

74.     Novex realleges paragraphs 1 through 73 of this Counterclaim and Third Party Complaint as if set forth in full herein.

75.     Counterclaim Defendants willingly entered into the Agreement with Novex.

76.     The law imputes into the Agreement a covenant of good faith and fair dealing requiring Counterclaim Defendants to perform all obligations thereunder in good faith.

77.     Novex performed all of its obligations under the Agreement.

78.     Counterclaim Defendants' actions breached the Agreement's covenant of good faith and fair dealing.

79.     Counterclaim Defendants' breaches of the covenant of good faith and fair dealing have harmed Novex in an amount to be proven at trial not less than $1,000,000.00.

### THIRD CLAIM FOR RELIEF
**(Declaratory Relief Under 28 U.S.C. § 2201)**

80.     Novex realleges paragraphs 1 through 79 of this Counterclaim and Third Party Complaint as if set forth in full herein.

81.     Based on the allegations contained in this Counterclaim and Third Party Complaint, there is a present and actual dispute and need for a judicial declaration.

82.     Pursuant to the Declaratory Judgment Act, 28 U.S.C. § 2201, Novex is entitled to and hereby moves the Court for a judgment declaring that:

a.      Counterclaim Defendants are in breach of the Agreement; and

b.      Novex is not required to pay to ABG any further royalty payments, including those ABG claims to be owing in its January 2024 invoice sent to Novex; and

c.      Counterclaim Defendants should pay to Novex its attorneys' fees and costs incurred in prosecuting this action.

### FOURTH CLAIM FOR RELIEF
**(Declaratory Judgment Pursuant to Nevada Revised Statutes §§ 30.010 *et seq.*)**

83.     Novex realleges paragraphs 1 through 82 of this Counterclaim and Third Party Complaint as if set forth in full herein.

84.     Based on the allegations contained in this Counterclaim and Third Party Complaint, there is a present and actual dispute and need for a judicial declaration.

85.     Pursuant to the Nevada Uniform Declaratory Judgments Act, Novex is entitled to a judgment declaring that:

a.      Counterclaim Defendants are in breach of the Agreement; and

b.      Novex is not required to pay to ABG any further royalty payments, including those ABG claims to be owing in its January 2024 invoice sent to Novex; and

c.      Counterclaim Defendants should pay to Novex its attorneys' fees and costs incurred in prosecuting this action.

## PRAYER FOR RELIEF

WHEREFORE, Novex respectfully requests the following relief:

A.      Judgment on all claims for the damages suffered by Novex as a result of Counterclaim Defendants' actions, in an amount to be determined at trial not less than $1,000,000.00;

B.      An award of Novex's costs and attorney's fees in this action;

C.      Declaratory relief as requested; and

D.      Such other relief as the Court may deem just and equitable.

DATED this 26th day of June, 2024.

Respectfully submitted,

**ALDRICH LAW FIRM, LTD.**

/s/ *John P. Aldrich*
John P. Aldrich, Esq.
Nevada Bar No. 6877
7866 West Sahara Avenue
Las Vegas, NV 89117
jaldrich@johnaldrichlawfirm.com

Jason M. Kerr, Esq.
Nevada Bar No. 7773
**PRICE PARKINSON & KERR**
5742 W. Harold Gatty Dr.
Salt Lake City, Utah 84116
jasonkerr@ppktrial.com

*Attorneys for Defendant, Counterclaim Plaintiff, and Third Party Plaintiff Novex Biotech, LLC*

18